# Wytheville.

## MONK AND OTHERS V. BARNETT AND OTHERS.

### June 13, 1912.

1.  CORPORATIONS—*Stock Subscriptions—Payment in Property—Valuation.*—
    The provisions of the constitution and the statute passed in pursuance
    thereof, relating to the liability of stockholders for their subscriptions,
    changed the former rule, and persons organizing a corporation can
    now subscribe to its capital stock and pay therefor in anything which
    the board of directors may determine to accept, and at any price
    which may be agreed upon, and the stock may be paid for at any
    price at which it may be offered by the company, and no one can
    complain, provided the requirements of the constitution and statute
    are complied with.
2.  CORPORATIONS—*Stock Subscriptions—Statutes—Derogation of Common
    Law.*—The statute permitting stock subscriptions to be paid in
    property at any valuation agreed upon between the subscriber and
    the company is in derogation of the common law, and must be strictly
    construed.
3.  CORPORATIONS—*Stock Subscriptions—Payment in Property—Over-Valua-
    tion.*—In the absence of any charge or proof of fraud in obtaining·
    the charter, or in the organization of the corporation, or the issuance
    of the stock, incorporators, who are the directors of a corporation,
    may place any value they please on property transferred to the com-·
    pany, and have stock of the company issued to them therefor, and,
    if the statement of the financial plan of the company is filed with the
    State Corporation Commission in the form prescribed by it, and is
    permitted by the Commission, there is no personal liability on the
    subscriber, notwithstanding the over-valuation of the property given·.
    for the stock.   Such is the policy of the State, and the courts are power-
    less to redress wrongs and impositions which may grow out of such
    transactions.
4.  CORPORATIONS—*Indebtedness—Liability of Stockholders.*—Persons con-
    tracting with corporations chartered in this State must look to the·
    records of the State Corporation Commission for information regarding.
    the assets of the corporation.  If the company is duly organized,
    they have no remedy against stockholders holding fully paid certifi-
    cates of stock, in the absence of fraud in the organization of the com-·
    pany or the issuing of its stocks.

Appeal from a decree of the Circuit Court of Norfolk county. Decree for the defendant. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Jeffries, Wolcott, Wolcott & Lankford,* for the appellants.

*Robert W. Shultice* and *Williams & Tunstall,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

This case, which is now before us for the second time, originated in a bill in equity filed by appellants against the Exposition Deepwater Pier Corporation and appellees, C. M. Barnett, J. W. Hough, and H. B. Goodridge, who were the only stockholders and incorporators of said corporation; the purpose of the bill being to enforce the mechanic's lien of the appellants against the pier and land of the Exposition Deepwater Pier Corporation, and to require the stockholders of the corporation to pay in full their subscriptions to the capital stock of the company.

There were two questions presented upon the former appeal, and upon the first of these questions this court reversed the decree of the circuit court appealed from, and remanded the cause, declining to pass upon the second question, for the reason that it appeared from the evidence in the record that the property of the corporation was sufficient to pay appellants' lien debt thereon; but the opinion added: "If, however, the real estate should prove inadequate to satisfy the lien, the appellants are not to be concluded by the decree under review from seeking such relief as they may be entitled to, if any, against the stockholders. *Monk* v. *Exposition Deepwater Pier Corp.,* 111 Va. 121, 68 S. E. 280.

It appears that when the evidence in the cause was taken the pier was comparatively new, and was supposed to be worth the amount named by the witnesses—$10,000; but, from various causes operating during the delay because of litigation as to the rights of the respective creditors in the property, it, after full advertising and active bidding, brought at public auction, on

September 17, 1910, only $2,400, leaving about $4,000 still due appellants. Thereupon, appellants proceeded in their effort to obtain a decree against said stockholders for an amount sufficient, out of what remained unpaid of their subscriptions, to discharge the balance of the debt alleged to be due appellants; but, upon a final hearing of the cause, the circuit court entered its decree, now under review, holding that said stockholders had substantially complied with the provisions of the Constitution and statutes of the State "enacted for the formation and regulation of corporations in this State, and that said stockholders (appellees here) had paid in full their subscriptions to the stock of the Exposition Deepwater Pier Corporation, and that there was no further liability upon them, or either of them," dismissing appellants' bill as to said stockholders.

Appellees, Barnett, Hough, and Goodridge, who, as has been stated, were all the stock subscribers and incorporators of said Deepwater Pier Corporation at the time of its organization, filed with the State Corporation Commission, in March, 1907, a statement of the financial plan upon the basis of which the stock or bonds of the corporation were to be issued, and the contention of appellants is that said statement filed by appellees was not such a compliance with the provisions of section 167 of the Constitution of Virginia, and of section 1105e, paragraph 9, of the Code of 1904, as would avail appellees of the privilege extended by the statute of avoiding their common law liability to pay into the treasury of the company so much of their stock subscriptions, up to the par value thereof, as might be necessary to discharge the indebtedness of the corporation.

Section 167 of the Constitution, *supra*, confers upon the General Assembly power to make general laws regulating and controlling all issues of stock and bonds by corporations, and further provides: "Whenever stock or bonds are to be issued by a corporation it shall, before issuing the same, file with the State Corporation Commission a statement (verified by the president or secretary of the corporation, and in such form as may be prescribed or permitted by the commission), setting forth fully and accurately the basis, or financial plan, upon which such stock or bonds are to be issued; and where such basis or plan includes services or

property (other than money), received or to be received by the -company, such statement shall accurately specify and describe, in the manner prescribed or permitted by the commission, the ·services and property, together with the valuation at which the same are received, or to be received; and such corporation shall -comply with any other requirements and restrictions which may be imposed by law." Said section of the Constitution then re- -quired the General Assembly to provide adequate penalties for the violation of the section, or any laws passed in pursuance ·thereof.

The statute (paragraph 9, section 1105e, *supra*) provides: "Subscriptions to the capital stock of any corporation may be paid in money, land, or other property, real or personal, leases, options, mines, mineral rights, patent rights, rights of way, or ·other rights or easements, contracts, labor, or services; and there ·shall be no individual or personal liability on any subscriber beyond the obligation to comply with such terms as he may have .agreed to in his contract of subscription; and any corporation may adopt such plan of financial organization and may dispose of its stock or bonds for the purposes of its incorporation at such prices, for such consideration, and on such terms and conditions as it sees fit; provided, however, that before making any issue of its stock or bonds it shall file with the State Corporation Commission a state- ment (verified by oath of the president or secretary of the corpora- tion, and in such form as may be prescribed or permitted by the commission), setting forth fully and accurately the basis or finan- cial plan upon which such stock and bonds are to be issued; and where such basis or plan includes services or property (other than money), received or to be received by the corporation, such state- ment shall accurately specify and describe, in the manner prescribed or permitted by the commission, the services and property, together with the valuation at which the same are received, or to be received, and the judgment of the directors as to the value of such land or ·other property, real or personal, leases, options, mines, mineral rights, patent rights, rights of way, or other rights or easements, contracts, labor, or services, in the absence of fraud, participated ·in by both parties to the transaction, shall be conclusive.

"For any violation of this section the offending corporation shall

be liable to a fine of not exceeding one thousand dollars, to be imposed and judgment entered therefor by the State Corporation Commission, and shall be enforced by its process."

The financial plan, filed with the State Corporation Commission in this instance, is as follows: "Four hundred shares, valued at four thousand dollars, are to be issued to J. W. Hough, H. B. Goodridge, and C. M. Barnett, as fully paid, in consideration of their turning over to said company their options, rights, and contracts to acquire land and build a pier near the exposition grounds, and their contracts with various steamboat lines to use said pier exclusively in taking passengers to said grounds, and contracts with said steamboat companies and with the Jamestown Exposition Company to take and pay cash for certain bonds of this company, said rights, options, and contracts being valued at four thousand dollars."

It appears that appellees subscribed to $40,000 of the stock of the Deepwater Pier Corporation, and paid for it with the contracts and options named in said plan of organization, all of which were worth, according to their own valuation, but $4,000; and it is conceded in the argument of this appeal that "the very object of section 167 of the Constitution was to do away with the common law liability of stockholders," under which they could be required to pay (in money) for their stock, up to the par value thereof, until the debts of the company were satisfied.

Very clearly, the provisions of the Constitution and statute change the former rule, and persons organizing a corporation can subscribe to its capital stock, and pay therefor in anything which the board of directors may determine to accept, and at any price which may be agreed upon, and the stock may be paid for at any price at which it may be offered by the company, and no one can complain—provided the requirements of the Constitution and statute are complied with; therefore, the sole question for our determination in this case is, where no fraud or deception has been practiced, does the financial plan of organization in question meet the requirements of the provisions of the Constitution and statute, and thereby relieve the appellees of their common law liability to pay for the stock subscribed to by them, up to the par value thereof, until the debts of the company are satisfied?

It is very true, as appellants contend, that the statute, *supra,* enacted pursuant to section 167 of the Constitution, with respect to the liability of subscribers to the capital stock of a corporation chartered under the laws of this State, is in derogation of the common law, and has to be given a strict construction; but it will readily be observed that the statute, in language plain and unambiguous, provides that subscriptions to the capital stock of any corporation may be paid, not only in money, but in every or a/ny species of property or property rights that could be suggested, including leases, options, contracts, labor or services, etc., and there shall be no individual or personal liability on any subscriber beyond the obligation to comply with such terms as he may have agreed to in his contract of subscription; that any corporation may adopt such plan of financial organization, and may dispose of its stock or bonds for the purposes of its incorporation at such prices, for such consideration, and on such terms and conditions as it sees fit; provided a statement of its financial plan of organization is first filed with the State Corporation Commission, in such form as may be *prescribed* or *permitted* by the commission, setting forth fully and accurately the basis or financial plan upon which such stock or bonds are to be issued; and where such basis or plan includes services or *property* (other than money), received or to be received by the corporation, such statement shall accurately specify and describe, in the manner *perscribed* or *permitted* by the commission, the services and *property*, together with the value at which the same are received, or to be received, and the judgment of the directors as to the value of the services *or property, real,* or personal, leases, options,   \* \* \*   contracts, etc., in the absence of fraud, *shall be conclusive.*

In this case appellees subscribed to $40,000 of the stock (400 shares) of the Exposition Deepwater Pier Corporation, and agreed with themselves, as the incorporators and directors of the company, that said stock be issued to them *fully paid,* in consideration of their turning over to the company "their options, rights, and contracts to acquire land and build a pier near the exposition grounds, and their contracts with various steamboat lines to use said pier exclusively in taking passengers to said grounds, and contracts with said steamboat companies and with the Jamestown

Exposition Company to take and pay cash for certain bonds of this company, said rights, options, and contracts being valued at four thousand dollars."

A more indefinite, vague, and unsatisfactory specification and description of the options and contracts agreed to be turned over to the company by appellees in payment for the $40,000 of stock, fully paid, to be issued to them by the company, is hardly to be conceived, but the statement of the financial plan of the organization of the corporation, filed with the Corporation Commission, was in the *form* prescribed by the commission, and was by the commission *permitted* when it received, approved, and ordered the same to be filed and to become a matter of record in the office of the commission.

By the adoption of our present Constitution, and the enactment of statutes pursuant thereto, relating to the issue of stocks and bonds by corporations, the policy of granting charters of incorporation to almost every conceivable business undertaking then in existence, or that might be undertaken within the State, was inaugurated, and, though the policy may be fraught with ever so many possibilities—indeed, probabilities—of fraud and imposition upon individuals, firms, or other corporations dealing with or becoming creditors of a corporation chartered in the State, the courts, in the absence of the charge and proof of fraud in the obtaining of the charter, or the organization of the corporation, or the issuing of its stock, are powerless to prevent or to redress such wrongs or impositions.

This new policy now in vogue in this State has not only in view the granting of a charter to any three or more individuals to conduct, as a corporation, any business that might be conducted by an individual or individuals within the State, but invites the application for such charters, and provides that all persons, firms, partnerships, or other corporations contracting with the corpotion chartered in the State, must look to the records of the State Corporation Commission for information there to be found, or suggested, as to the character, location, and value of the assets of the corporation, and if they fail to look to said records, or fail to make proper inquiry along lines suggested by these records, and sustain a loss or injury in consequence of such neglect of duty,

81

they shall have no remedy in the courts against the stockholders having certificates of fully paid stock for such loss or injury.

One who is advised, or might have been advised, as to the character and value of the assets of a corporation, and extends credit to the corporation, cannot, in the absence of fraud in the organization of the company, or the issuing of its stock or bonds, complain that the assets of the company were not as valuable as he expected them to be, and he has no remedy or right of action against the stockholders of the corporation holding its fully paid stock.

Such is the case before us, and we are of opinion, therefore, that the decree appealed from is right, and it is affirmed.

*Affirmed.*