# Richmond

N. S. Gumenick v. Edward S. Ferebee, Trustee, Et Al.
Ralph Realty Corporation v. Edward S. Ferebee,
Trustee, Et Al.

March 12, 1951.

Record Nos. 3750, 3759.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*James G. Martin* and *Bertram S. Nusbaum,* for appellant, N. S. Gumenick.

*William H. Sands, Robert C. Nusbaum, Jonathan W. Old, Jr., Vernon D. Hitchings, Jr., P. A. Agelasto* and *William L. Parker,* for appellees, Edward S. Ferebee, Trustee, et al.

*Robert C. Nusbaum* and *Alan J. Hofheimer,* for appellant, Ralph Realty Corporation.

*William H. Sands* and *William L. Parker,* for appellees, Edward S. Ferebee, Trustee, et al.

BUCHANAN, J., delivered the opinion of the court.

These appeals present questions of priority among claims to money in the hands of a trustee from the sale of personal property under a deed of trust. The main question is whether the property which was sold belonged to a partnership or a corporation.

After the sale the appellants asserted claims against the fund based on rents alleged to be due them and claiming priority over the debt secured by the deed of trust. The city of Norfolk also asserted a claim for taxes on the property sold. The trustee,

Ferebee, brought this suit asking directions. The appellants and the appellee, Field, the deed of trust creditor, filed answers and the cause was referred to a commissioner who heard evidence and reported that the deed of trust debt was prior to the claims for rent. The appellants filed exceptions, which were overruled, and the decree appealed from was entered confirming the commissioner's report and directing the trustee to disburse the money in accordance with the report. It is necessary to state in some detail the underlying facts.

Prior to September, 1946, the property sold under the deed of trust, consisting of restaurant fixtures and furniture, was owned by Hariton, Themides and Demitriou, partners operating a restaurant in Norfolk under the name of Windsor House.

On September 5, 1946, these partners executed a deed of trust on these chattels to J. Hoge Tyler, III, and James Mann, Jr., Trustees, referred to hereinafter as the Tyler deed of trust, to secure a negotiable note for $6,000 made by the partners payable to bearer on demand.

On June 21, 1947, the partners executed a second deed of trust on the same property to Joseph Marcus, Trustee, hereinafter referred to as the Marcus deed of trust, to secure a negotiable note for $9,732.58, made by the partners, payable to bearer in 19 installments, the last of which was to become due January 21, 1949.

On September 3, 1947, a charter was issued by the State Corporation Commission to Windsor House Restaurant, Inc., the stockholders of which were the three partners and one John N. Orphan, to each of whom were issued 30 shares on September 8, 1947. At the first meeting of the directors of the corporation, who were Hariton, Orphan and Themides, held on September 8, 1947, it was resolved that the corporation acquire the business of Windsor House Restaurant, previously owned and operated by the partners "at the value thereof which is here determined to be the sum of ......." It was further resolved that the corporation enter into a certain agreement of lease, under date of September 2, 1947, with Ralph Realty Corporation as lessor, for the property described in the lease, being the premises in which the restaurant was operated and in which the furniture and fixtures were located. The officers of the corporation were authorized to execute the lease and affix the corporate seal. They

were also directed to file all proper certificates and statements required by law to be filed with the State Corporation Commission. The four stockholders signed the minutes and approved the actions taken and things done at the meeting.

The lease from Ralph Realty Corporation, dated as aforesaid, leased to Windsor House Restaurant, Inc., the premises "on which the lessee is now operating the Windsor House Restaurant," and all previous agreements of lease to "the persons who are now officers of the lessee corporation" were terminated by mutual consent. The lease was for an original term of three years from September 1, 1947, with a five-year renewal privilege, and provided for a minimum rental of $500 a month in advance, with all property on the premises liable to distress for rent.

The charter of the corporation was obtained by a well-known law firm of Norfolk and one of its partners testified that he was attorney for the corporation then and had been ever since, and it was his understanding that after the purchase of the personal property by the corporation, as noted in the minutes, the transfer would be completed by the making of certain book entries to take care of the matter; that on or about September 2, 1947, the business of the Windsor House Restaurant was being conducted by the corporation; that from his files and personal knowledge the corporation actually took over and carried on the business and was the owner of all the assets, including the furniture and fixtures; and that he knew of no transactions by the partnership subsequent to the commencement of business by the corporation; and that the minutes of the corporation, to which he referred, had been in his possession since they were prepared.

A firm of accountants had been employed by the partnership and continued in the employment of the corporation from its beginning until the latter part of 1948 to keep its records. A member of the firm testified from records prepared by him relating to the transfer from the partnership to the corporation. These records, he said, showed transfer of the assets and liabilities of the partnership to the corporation, including all furniture and fixtures of the restaurant, for a consideration of stock to the partners, as of September 1, 1947. After September 1, 1947, the corporation operated the restaurant business and was in possession of all the fixtures and equipment. This entry was made at the direction of the partners and thereafter no further

records were kept for the partnership and no income tax report was made by the partnership after August, 1947. A journal sheet was presented showing opposite the words "Property Account" the figures $48,442.48, representing the value of the furniture, fixtures and equipment, with a notation on the following line "To record transfer of assets to the corporation." These entries were made not long after the formation of the corporation. He had never seen a bill of sale for the transfer, but he understood there was a paper transferring all the assets and liabilities to the corporation. The entries referred to were the opening entries of a set of books prepared to show the closing of the partnership and the transfer of all the assets of the partnership to the corporation, and the issue of stock to the partners for their equities in the partnership. After the transfer the partnership had no assets left, it was dissolved and a tax return filed in accordance with the entries. Orphan, the only other stockholder, paid cash for his shares, but the consideration for the stock issued to the partners was their interest in the partnership assets transferred to the corporation. This, he said, was all reflected by the entries in the books, made by him as of the date of the organization of the corporation as a result of conferences with the partners.

On April 1, 1948, Ralph Realty Corporation conveyed the real property, subject to the lease to the corporation, to the appellant, Gumenick.

Thereafter, on June 29, 1948, the deed of trust was executed to Ferebee, Trustee, under which the trustee sold the property on June 27, 1949, for $9,700, the fund in controversy. This deed of trust was made by Hariton, Themides and Demitriou, "partners trading as Windsor House;" Windsor House Restaurant, Incorporated, "a corporation duly organized and existing under the laws of the State of Virginia," and Windsor House Social Club, Incorporated. The partners conveyed to the trustee the personal property referred to "with General Warranty;" Windsor House Restaurant, Inc., conveyed its interest in its lease from Ralph Realty Corporation, dated September 2, 1947; and the Social Club conveyed its interest in a lease from Windsor House Restaurant, Inc., covering premises adjacent to the restaurant, not here involved; all in trust to secure the holder of a negotiable note payable to bearer for $8,000, signed by Hariton, Thermides and Demitriou individually and as partners trading as Windsor House. The appellee Field lent the money

and was the holder of the note. Hariton claimed that they intended to give the deed of trust on the property for the corporation, not for the partners who did not own it, and to make themselves liable on the note if it was not collected from the property.

November 30, 1948, Ralph Realty Corporation recovered a judgment against Windsor House Restaurant, Inc., for the principal sum of $324.78, on which execution was issued and levied December 1, 1948, on the same property (admitted in appellants' briefs to be inferior to the Gumenick claim referred to next below).

April 5 and June 18, 1949, appellant Gumenick issued distress warrants against Windsor House Restaurant, Inc., for arrears of rent amounting to $3,000, but which his brief states has been reduced by credits to $1,350, which were levied on the same property.

The evidence above detailed with respect to the chartering and organizing of the corporation, the transfer to it and ownership by it of the personal property in the restaurant, the lease to it by the owner of the premises, the taking possession by it of the premises and of the personal property thereon, and the operation by it of the restaurant business at all times after September, 1947, finds no contradiction by any testimony in the record. The commissioner held that since it was not denied that the three partners originally owned the fixtures, the appellants had not sustained their burden of proving a transfer of ownership from the partners to the corporation, and that hence the deed of trust given on the property by the partners had priority over the liens of Gumenick and Ralph Realty Corporation against the corporation.

We think the exceptions to that holding of the commissioner should have been sustained, as being contrary to the evidence. We said in *Mitchell* v. *Cox*, 189 Va. 236, 243, 52 S. E. (2d) 105, 109, that while a commissioner's report does not have the same weight as a jury's verdict on conflicting evidence, yet when based on testimony taken in his presence, his factual finding is entitled to much weight and should not be disturbed unless unsupported by the evidence. But a careful examination of the record in this case does not disclose any evidence to refute the evidence for the appellants that the corporation was organized to take over the restaurant business; that all the assets of the partnership were transferred to the corporation in exchange for stock in the corporation; that thereafter the corporation took

possession of the restaurant and its equipment and operated it, and was so in possession and operation at the time of the execution of the Ferebee deed of trust. These are facts proved by the attorney and the accountant who handled the matter, and by the contemporary records of the partners and the corporation.

It necessarily follows that since the partnership did not own the chattels, their deed of trust conveying them to Ferebee, Trustee, did not pass title to the trustee and did not create a lien in favor of Field superior to the lien of the landlord, Gumenick, against the corporation, his tenant and the actual owner of the property; nor superior to the execution lien of Ralph Realty Corporation against the corporation. Its effect as between the former partners and the corporation on the one hand and Field, the owner of the note secured by the deed of trust, on the other, is another matter and will be considered later.

The appellee, Field, contends that the transfer to the corporation, if made, was void because the corporation made a statement of its financial plan to the State Corporation Commission which was false and contrary to law. This statement, filed with the State Corporation Commission November 26, 1947, was that the 120 shares of stock to be issued, 30 shares each to the three partners and John N. Orphan, were to be issued for money.

Section 3788 of the Code of 1919, as amended, in effect at that time (now § 13-97 of the 1950 Code), enacted pursuant to section 167 of the Constitution, provides, so far as here pertinent, that subscriptions to the capital stock of a corporation may be paid in property and any corporation may adopt such plan of financial organization and may dispose of its stock for such consideration and on such terms as it sees fit; but before issuing its stock it shall file with the State Corporation Commission a sworn statement setting forth fully and accurately the basis or financial plan upon which such stock is to be issued; and when such plan includes receipt of property by the corporation the statement shall describe the property and give its value; and the judgment of the directors as to value shall be conclusive in the absence of fraud participated in by both parties. Failure to comply is made punishable by a fine of from ten to one thousand dollars.

In *Monk* v. *Barnett*, 113 Va. 635, 75 S. E. 185, $40,000 of stock was issued to three stockholders for property valued at $4,000 and so reported to the State Corporation Commission. The

effort of creditors of the corporation to require the stockholders to pay the difference was rejected. The court said that the common law measure of liability of the stockholder had been changed and that under the policy inaugurated by the Constitution and statute those contracting with the corporation must look to the records of the State Corporation Commission for information as to the assets of the corporation, and if they fail to make proper inquiry they would have no remedy for loss against stockholders having certificates of fully paid stock.

■ Obviously, the filing of the statement required by the statute is for the benefit of creditors and others dealing with the corporation. Whatever be the liability of the corporation and its stockholders to creditors of the corporation by reason of the statement furnished to the Corporation Commission, or the liability to the punishment prescribed by the statute, the statement cannot have the effect here of rendering void the transfer of the property to the corporation so as to defeat the rights of the appellants, who are innocent creditors of the corporation. To give it that effect would allow the corporation to take advantage of its own wrong. It would permit the three persons who transferred the property to the corporation, two of whom are the president and secretary of the corporation, to profit by disregarding that transfer and using the property of the corporation as a means of borrowing money for themselves. It would permit the deed of trust creditor to set up the illegal act of his debtors to establish his claim.

In *Colbert* v. *Ashland Const. Co.,* 176 Va. 500, 11 S. E. (2d) 612, relied on by Field, Colbert was denied recovery because he had not complied with section 4722 (1) of Michie's Code, 1942, (§ 59-169, Code, 1950), providing that no person or corporation shall transact business in this State under any assumed or fictitious name, without first filing a certificate giving the names of the persons owning the business, etc., and prescribing penalty for its violation. That holding was on the principle that a person who cannot establish his cause of action without relying on an illegal contract cannot recover. In *McMullen* v. *Hoffman,* 174 U. S. 639, 19 S. Ct. 839, 43 L. ed. 1117, 1123, quoted from in the *Colbert Case,* this was said:

"The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the

illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract. In cases of this kind the maxim is *Potior est conditio defendentis.*"

That principle is not applicable here. The contract between the partners and the corporation, by which goods of the partners were exchanged for stock of the corporation, was not illegal, but a kind of contract expressly permitted by the Constitution and the statute. The corporation received for the stock issued to the partners property worth more than the par value of the stock. What the corporation failed to do was to report the property received and its value as required by the statute. The appellants are not relying upon this illegal act to support their claim. They are relying upon a contract recognized as legal, and they ought not to be required to suffer for the failure of the corporation to comply with a requirement of the law made for the benefit of them and other creditors of the corporation. *Cf. Watters & Martin v. Homes Corp.*, 136 Va. 114, 124, 116 S. E. 366, 369.

It is further contended that the corporate entity should be disregarded because the partners used it as a device to defraud Field. If it be accepted that the evidence shows that was done, yet there is no charge and no evidence that the appellants, creditors of the corporation, shared in or contributed in any way to such fraud or purpose. They are not responsible for the misdoings of Field's debtors.

Likewise the contention lacks merit that the transfer was void as to Field because no bill of sale was executed or recorded and the property remained with the vendors. Code, 1950, § 55-96. The evidence was without conflict that possession was delivered to the corporation and it had operated the business for several months prior to the Ferebee trust deed, in which the lease of the premises to the corporation was referred to by its date and conveyed to the trustee.

The further contention is made that the corporation is estopped to claim ownership by having joined in the deed of trust. That is true, we think, as to the corporation's right to the chattels as against the deed of trust debt, according to the principles of estoppel as stated in *Chesapeake, etc., R. Co. v. Walker,* 100 Va. 69, 91, 40 S. E. 633, 641, 914. The corporation is not in fact claiming any part of the fund in controversy. But again this is not a contest between the corporation and the trust

deed creditor, but between the latter and innocent creditors of the corporation. It seems perfectly plain that one having a prior lien against goods of an owner will not lose it because, without his knowledge, a third person who had no title afterwards gave a deed of trust on the goods which was joined in by the owner to include his lease on the real estate in which the goods were located. Even had the corporation owner here specifically conveyed the goods to the trustee, the landlord's lien would still have been prior to the extent of six months' rent. Code, 1950, §§ 55-231, 55-233; *United States v. Waddill, Holland & Flinn,* 182 Va. 351, 363, 28 S. E. (2d) 741, 746 (reversed as to priority of federal claim, 323 U. S. 353, 65 S. Ct. 304, 89 L. ed. 294).

Finally, Field contends that since appellants concede he is subrogated to the first lien of the Tyler deed of trust, he is, with as much reason, entitled to the benefit of the Marcus deed of trust, both of which were made and recorded before the transfer of the property to the corporation. The $6,000 note secured by the Tyler deed of trust was paid off by Ferebee, Trustee, out of the $8,000 loan from Field at the direction of Hariton. Appellants make no objection to allowing Field priority to that extent.

The note for $9,732.58, made by Hariton, Themides and Demitriou, secured by the Marcus deed of trust, was delivered by Hariton to Ferebee, Trustee, as collateral security for the $8,000 loan from Field, and was to be returned to Hariton if no default occurred in the payment of the Field note. Ferebee said of this transaction: "Frankly I don't know exactly why the parties borrowing the money wanted to leave outstanding the first deed of trust rather than to release it, but since they did I took the first deed of trust note as additional collateral for Mr. Field and the second deed of trust note of $8,000.00 and then delivered the two notes to Mr. Field." It appears from the record that both this note and the $8,000 note were afterwards stolen from Field.

After the sale of the property by Ferebee, Trustee, on June 27, 1949, and after he had collected the purchase money and delivered a deed to the purchaser on July 7, 1949, the purchaser's attorney requested that the Marcus deed of trust be released. Ferebee, who testified he was counsel for Field, replied that he would have no objection if the consent of Marcus, Trustee, was obtained. Thereafter a release deed was prepared for the joint signatures of Field and Marcus, Trustee. Ferebee further testified that Marcus had said the deed of trust had been released.

This is all that appears in the record in regard to the matter and it is not sufficient to establish that Field is now entitled to any rights under the Marcus deed of trust. In fact, the question was not made an issue in the court below.

The commissioner reported, and it was confirmed by the court, that the city of Norfolk had no lien for the taxes claimed by it, but that by the terms of the deed of trust to Ferebee the then outstanding taxes against the partners were made a claim superior to the debt to Field. Personal property taxes due the city for 1946 and 1947 were accordingly given priority over the Field debt in the distribution to be made under the deed of trust. No error has been assigned on that point and the city did not appear on this appeal.

For the reasons stated we hold that the money in the hands of Ferebee, Trustee, from the sale of the personal property should be distributed, so far as it will go, in this order: (1) To the costs of suit and the cost of executing the trust as fixed by the commissioner and the decree appealed from; (2) to the appellee Field, for the principal amount paid in discharge of the note secured by the Tyler deed of trust, with interest thereon from September 5, 1946, but not exceeding the amount due on his note secured by the Ferebee deed of trust; (3) to Gumenick, for the balance due on his distress warrants for rent; (4) to Ralph Realty Corporation, for the amount due under the execution issued on its judgment; (5) to the city of Norfolk for 1946 and 1947 taxes; (6) to Field on the balance due on his note.

The decree complained of is therefore reversed and the cause remanded for the entry of a decree in accordance with this opinion.

*Reversed and remanded.*