247 F.Supp. 14 (1965)
Mary B. VANN, etc., Plaintiff,
v.
INDUSTRIAL PROCESSES CO., Inc., et al., Defendants.
Civ. A. No. 2974-61.
United States District Court District of Columbia.
October 14, 1965.
*15 *16 Byron N. Scott, Washington, D. C., for plaintiff.
James F. Sams and Clarence E. Dawson, Washington, D. C., for defendant Industrial Processes Company.
Lowry N. Coe, Washington, D. C., for defendants Elmer Davies, Norton, Woodworth, Evans and Howard Davies.
Marion E. Harrison, Washington, D. C., for defendant John Phillips.
HOLTZOFF, District Judge.
This is a derivative action brought by a minority stockholder of a corporation known as Industrial Processes Company, Incorporated, organized under the laws of the State of Virginia, against its majority stockholders and certain other persons, to redress grievances which the plaintiff asserts the Corporation has against the individual defendants and in respect to which the Corporation declined to act.
Industrial Processes Company, Incorporated, which is named as a defendant in this action, was organized in July 1949 by the defendants Elmer Davies and his brother Howard Davies. The two Davies brothers had been endeavoring to develop an idea into a concrete process and concrete apparatus for sterilizing liquids such as fruit juices and milk, and further for extracting salt from sea water and making sea water potable. At the time the ideas were in an embryonic or inchoate state, no patent applications had been filed, no machinery had been built or anything concrete done beyond preliminary experimentation at best.
The plaintiff, Mary B. Vann, is a lady of culture and refinement, but apparently of little business experience and not too well versed in the intricacies of corporate affairs. She met Elmer Davies through a relative, heard that he was about to organize a corporation for the exploitation of these inventions, and indicated that she would like to invest some money in the enterprise. It is fair to the defendants to note that they did not invite her to make the investment. Nor did they do anything to induce her to do so. She made the first approach. She was given to understand that the Davies brothers would control the corporation, as was to be expected, because, naturally, they wanted to be in control of their own inventions. It was their intention to control 52 per cent of the stock and to sell the balance as best they could by private sale to friends and acquaintances, without apparently putting the stock on the open market, as otherwise they might have come under the provisions of the Securities and Exchange Act.
The Corporation was organized, as stated, under the laws of the State of Virginia. The reason why Virginia was selected will become apparent hereafter. The organization meeting, after the Articles of Incorporation were properly filed, was held on July 9, 1949. At that meeting the two Davies brothers offered to assign to the Corporation all of their inventions, covering methods and apparatus for heating and vaporizing liquids, heat exchange apparatus and methods of heat exchange, concentrating evaporators and methods of operating same, centrifugal apparatus and methods of operating same, methods and apparatus for heat treating liquids, solids or gases, and any and all improvements on or relating to the apparatus or methods enumerated, in exchange for 26,000 shares of the authorized stock of the company. The authorized stock of the company was 50,000 shares, so that by this method the Davies brothers would receive control of the company by virtue of ownership of a majority of the stock. The par value of the stock was $1.00 per share. The Board of Directors at that meeting accepted the offer and fixed the value of the inventions that were being conveyed by the Davies brothers for 26,000 shares of the capital stock of the Corporation at $2,600. At the same meeting it was voted to sell stock of the company and to accept subscriptions at $5.00 a share, among them *17 a subscription for 200 shares from the plaintiff and her husband. She later acquired additional shares.
The ownership of the plaintiff's shares has been changed, so that now they are owned by Mary B. Vann and her sister, Ann B. Lackman. Some question has been raised as to whether Mary B. Vann is qualified to bring a stockholder's action without joining her co-owner. The Court is of the opinion that she is qualified. She is either a tenant in common or a joint tenant of the stock. If she is a tenant in common, she has a one-half interest in the stock. If there is a joint tenancy, then each owns the whole, subject to the right of survivorship. In either event, the Court is of the opinion that Mary B. Vann is qualified to bring this suit.
The first count of the complaint finds fault with the fact that while stock was being sold for $5.00 a share, the Davies brothers caused the Corporation to vote to them 26,000 shares for a consideration worth $2,600 or ten cents a share. There is no doubt that at first blush this transaction may well arouse a query. We must, however, determine an issue such as this by the law of the State in which the Corporation was organized, namely, Virginia. The Corporation Laws of Virginia in regard to the issuance of stock are quite different and more liberal than the laws of some other States. The Constitution of Virginia, Section 167, authorizes the issuance of stock for services or property other than money, with the qualification that a statement must be filed with the State Corporation Commission describing the services or property, together with the valuation at which the same are received or to be received. This provision is elaborated in the Code of Virginia, Section 13-97, which at the time of the transaction provided, in part, that:
"Subscriptions to the capital stock of any corporation may be paid in money, land, or other property, real or personal, leases, options, mines, minerals, mineral rights, patent rights, rights of way, or other rights or easements, contracts, labor, or services."
It is readily apparent, therefore, that stock may be issued for practically any type of an intangible asset. There is a further provision to the effect that:
"There shall be no individual or personal liability on any subscriber beyond the obligation to comply with such terms as he may have agreed to in his contract of subscription."
In other words, a stockholder may not be compelled to pay for his stock anything in addition to the consideration exacted in the contract of subscription.
Consequently, inadequacy of consideration does not create any obligation on the part of the stockholder to make any additional payment. There is a provision to the effect that:
"Any corporation may adopt such plan of financial organization and may dispose of its stock or bonds for the purposes of the corporation at such prices, for such consideration, and on such terms and conditions as it sees fit."
There is a requirement to the effect that a statement must be filed with the State Corporation Commission describing the services and property other than money received in payment for stock, "together with the valuation at which the same are received, or to be received."
The testimony is that the Davies brothers were unable to value their inventions as of July 1949. Indeed, it is difficult to discern how anyone could put a real value on them because they were in an inchoate state and no one could foretell whether they would be successful or not and whether they would ever reach a state of being able to be profitably marketed. Apparently, on the advice of counsel, for the purposes of compliance with this statutory requirement, they valued the inventions at the total amount of out-of-pocket expenses that they had incurred in connection with developing the inventions up to that time, which was, roughly, $2,600. The Court is unable to perceive anything fraudulent or reprehensible *18 in this approach. Possibly in retrospect one would say that some other approach might have been better. For instance, they might have multiplied the number of shares that they were getting by five and valued the inventions at $65,000. The result would have been the same. Hindsight is always better than foresight. Under the circumstances, the Court is unable to conclude that the Corporation has any cause of action against the organizers and promoters of the corporation.
A case that is very similar to the one presented here is a decision of the Supreme Court of Virginia in Monk v. Barnett, 113 Va. 635, 75 S.E. 185. Among other things, this case held that a stockholder is not liable to pay the balance of the value of the stock purchased by him from the corporation even if the consideration paid is inadequate. This is contrary to the rules of law that have existed in some other States. The importance of this case, however, for the purposes of the present controversy is a discussion of Virginia statutes to which reference has already been made. The Court said, in part:
"Very clearly the provisions of the Constitution and statute change the former rule, and persons organizing a corporation can subscribe to its capital stock and pay therefor in anything which the board of directors may determine to accept, and at a price which may be agreed upon, and the stock may be paid for at any price at which it may be offered by the company, and no one can complain, provided the requirements of the Constitution and statute are complied with. Therefore the sole question for our determination in this case is: Where no fraud or deception has been practiced, does the financial plan of organization in question meet the requirements of the provisions of the Constitution and statute, and thereby relieve the appellees of their common-law liability to pay for stock subscribed to by them up to the par value thereof until the debts of the company are satisfied?"
Again, the Court repeats:
"* * * it will be readily observed that the statute, in language plain and unambiguous, provides that subscriptions to the capital stock of any corporation may be paid, not only in money, but in every or any species of property or property rights that could be suggested."
In this case there is no fraud or deception in the original issuance of the stock. The plaintiff knew that the individual defendants were going to control the corporation, which in turn meant that they were to receive a majority of the stock. The nominal value placed upon it is not a matter of major consequence.
Counsel for the plaintiff relies on an earlier decision of the same Court, Richlands Oil Co. v. Morriss, 108 Va. 288, 61 S.E. 762. That case, however, involved a corporation organized under the laws of South Dakota and there is no showing that the laws of South Dakota were as liberal as to stock issues as the laws of Virginia. Consequently, the case is not in point, and if it were, then it is inconsistent with the later decision to which reference has been made and which must prevail.
There are a few other observations that should be made about the first count of the complaint, which seeks to set aside the issuance of the stock to the Davies brothers in the manner that has already been indicated. It is alleged that there is no compliance with Rule 23(b) of the Federal Rules of Civil Procedure, which governs secondary actions by shareholders and requires a showing that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved upon him by operation of law. This rule is not new or novel. It was embodied in the old Federal Equity Rules, and, in turn, was derived from an early decision of the Supreme Court in the case of Hawes v. City of Oakland, 104 U.S. 450, 26 L.Ed. 827. The purpose of the rule is to prevent an outsider from buying shares *19 of stock in a corporation for the purpose of seeking to upset an action that had been taken by the corporation at some previous time. It sought to preclude an undesirable practice on the part of some speculators. Here, however, the action complained of was simultaneous with the purchase of the stock by the plaintiff and therefore, although I hold that she has not established a cause of action, I hold that her rights are not barred by Rule 23(b). In my opinion, Rule 23(b) does not preclude a person from bringing a derivative action if he became a stockholder simultaneously with the transaction of which he complains.
I do feel, however, that irrespective of the merits of the action, it would be barred by laches. It seems well to dispose of the various points raised, instead of determining merely the merits of the cause of action. This suit was brought in 1961. The transaction assailed by the plaintiff occurred in 1949. In 1951 the corporation filed in the office of the State Corporation Commission of Virginia the statement required by statute, explaining and describing the method by which stock was issued and the consideration therefor. While there has been no publication on the part of the defendants of the facts here involved, neither has there been any affirmative concealment. The plaintiff apparently made no effort to find out the basis of the stock issue until she was approached by another stockholder, who induced her to bring this action because he thought that it would be better for an orginal stockholder to do so, rather than for him, as he purchased his stock subsequently. During the intervening period between 1949 and 1965 some of the stock exchanged hands. Consequently, both on the ground that the Court concludes that no cause of action has been established under Count one of the complaint and because of laches, the first count will be dismissed on the merits.
The second count is easily disposed of. It is a sequel to the first count in a sense. About three years after the organization of the defendant corporation, a subsidiary corporation was organized known as Daveat Milk Processes Company, Incorporated, under the laws of Delaware. It was a subsidiary that was entirely within the control of the stockholders of the Industrial Processes Company, Incorporated, as each stockholder of the latter received 20 shares of Daveat for one share of Industrial. Count two seeks to follow the Daveat stock received by the individual defendants, on the theory that it is one of the fruits of the transaction claimed to be illegal in the first count. Since the first count falls, the Court will likewise dismiss the second count on the merits.
The third count relates to the payment of salaries and to the sale by the defendant Howard Davies of his stock back to the defendant corporation. It is alleged, and not denied  in fact, established  that defendant Howard Davies resold to Industrial 10,000 shares of Industrial stock that he had originally received when the corporation was organized and 200,000 of Daveat shares which were acquired by him on the basis of his being an owner of Industrial shares. In addition, there was added a release from a claim for back salary. This transaction took place on March 28, 1955. The testimony is to the effect that Howard Davies became desirous of entering into a different business, that he needed money for that purpose and that in order to obtain the required capital he sold to Industrial 10,000 shares which he had originally received, together with a corresponding amount of Daveat shares, and that Industrial repurchased the stock for $10,000. Mr. Elmer Davies testified quite candidly that this is what happened. Obviously this transaction was not for the benefit of the company and the Court reaches the conclusion that it was an unlawful diversion of assets of Industrial, and since it was through the domination by Elmer Davies of Industrial Processes Company that Industrial was caused to buy the stock, judgment will be rendered in favor of the company and against Elmer Davies and Howard Davies for $10,000 on Count Three.
*20 Count Four alleges that stock was illegally issued to Elmer Davies on May 20, 1957, in release for his claim for back salary. The theory of the complaint in this respect is that the claim for back salary was non-existent. The Court disagrees. On December 17, 1949, the Board of Directors of Industrial voted a salary of $650 a month to be paid to Elmer Davies out of future earnings of the company. The Court construes this resolution as meaning that the salary would be earned from month-to-month, but payment would be deferred until funds were available, and not that the salary would not accrue until earnings were forthcoming. Under the circumstances, the claim for back salary existed and its release in exchange for stock is neither fraudulent nor illegal.
It is a fact, however, that the corporation, in its report to stockholders, represented that officers were serving without compensation and that in a letter that he wrote to an interested party, Elmer Davies made a similar statement. This was reprehensible, but it does not create a cause of action in favor of the corporation. It must be borne in mind that in a derivative action, the plaintiff asserts the rights of the corporation. It may well be that any stockholder who, in purchasing his stock, relied on this representation is in a position to sue for rescission but this matter is not before the Court at this time.
The Fifth count of the complaint relates to a purchase of stock by one S. Howard Evans. He first entered into a contract to purchase 1,000 shares of Industrial at $10.00 per share. Before the sale was consummated, according to the evidence, he came to the conclusion and ascertained that others were being sold stock on a more desirable basis and he, feeling aggrieved, requested a modification of his contract. Accordingly, he received 1500 shares of the capital stock of Industrial instead of 1,000 shares as originally agreed upon. This is clearly a matter of internal management and business judgment on the part of the Directors of the company.
Count Six complains of the issuance of stock to certain individuals. It is claimed that the issuance of the stock was without consideration and constituted unauthorized gifts of corporate assets. On the other hand, the defense is that each of the recipients received his stock for services. The nature of the services has been testified to in each instance. To be sure, the Court is rather of the impression that Elmer Davies was making the distribution of stock for services with a lavish hand. It cannot be said, however, that the plaintiff has established by a fair preponderance of the evidence that there was no consideration for the blocks of stock referred to in this count and that they were issued without consideration. To be sure, some of the services were rendered to the subsidiary corporation, but the stockholders of the parent corporation, Industrial, were also the stockholders of the subsidiary, and the two were being managed jointly. This is not a case of a subsidiary corporation being organized in which the stock is owned solely by the majority stockholders of the parent corporation, and the minority stockholders of the parent corporation are being frozen out of the subsidiary corporation. All the stockholders of both corporations were on an equal basis in each. Consequently, the stockholders of Industrial were equally benefited whether the services were rendered directly to Industrial or to the subsidiary corporation.
Count Seven has been dismissed by the plaintiff.
Count Eight complains of a transfer by Industrial of 133,333 shares of Daveat stock back to Daveat Corporation. It is asserted that this was done without consideration. The transaction was fully and satisfactorily explained. One Hamidy desired to invest $100,000 in the enterprise, but he wanted to buy stock in the subsidiary corporation. In order to make this transaction possible the defendant corporation, Industrial, transferred to Daveat 133,333 shares of Daveat stock which Industrial had held in its treasury. That made it possible *21 for Hamidy to invest $100,000 in the enterprise. The fact that the investment was made in large part in stock of Daveat, the subsidiary, does not affect the question, because the two corporations were practically a single enterprise. The stockholders of the parent corporation were in the same proportion also stockholders of the subsidiary, and therefore the stockholders of the parent corporation benefited to the same extent as the subsidiary corporation did.
The Court is not unmindful of the fact that the stockholders who purchased stock for money may well be dissatisfied with the enterprise. They thought and expected in 1949 that within a reasonable time the inventions, which had rosy prospects, according to Elmer Davies, would be brought to consummation and would be placed on the market. Sixteen years had expired and, while experimentation has been carried on, stock has been sold, various parties who might be interested have been approached, nothing concrete has been accomplished in the way of marketing the invention and realizing any money or any profit for those who invested in the enterprise. A large amount of money has been expended for current expenses out of proceeds of the sale of stock. One investor invested $100,000, out of which $64,000 was used for salaries, rent, and the like. These circumstances, however, do not create a cause of action. It may be that the law should be tightened and extend even to private individual sales the protection of the Securities and Exchange Commission, but that is not for this Court to say.
Accordingly, each of the counts will be dismissed on the merits, except Count Three, and as to Count Three judgment will be rendered in favor of Industrial Processes Company, Incorporated, against Elmer Davies and Howard Davies, jointly and severally, for $10,000.
Counsel will prepare an appropriate decree.
A transcript of this oral decision will constitute the findings of fact and conclusions of law.